1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Nyswaner, et al., | No. CV-17-04130-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| C.H. Robinson Worldwide Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendant C.H. Robinson Worldwide Incorporated's ("Robinson's") Motion for Summary Judgment (Doc. 35). For the following reasons, the motion is denied.

## BACKGROUND

At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Disputed facts are "viewed in the light most favorable to" Plaintiff Robert Nyswaner, the non-moving party. See *Scott v. Harris*, 550 U.S. 372, 380 (2007).

C.H. Robinson Worldwide Incorporated ("Robinson") is a federally licensed property freight broker that contracts with motor carriers to haul freight shipments. (Doc. 36, ¶¶ 1-2). In August 2015, Robinson contracted with Luga Transportation to transport Glyphosate from Texas to Arizona. (Doc. 26 ¶ 6). While transporting the Glyphosate, Manuel Prado, an employee of Luga Transportation, lost control of the trailer-truck, which

rolled over on its side and blocked the lanes of the interstate near Gila Bend. (Doc. 26 ¶ 9). Following the rollover, Plaintiff Robert Nyswaner collided with the trailer-truck and asserts that he suffered injuries as a result. (Doc. 26, ¶ 11).

Mr. Nyswaner filed a lawsuit in Maricopa County Superior Court against Luga Transportation and Mr. Prado. That case settled. (Doc. 42-1 at 1). Mr. Nyswaner then filed this lawsuit against Robinson, seeking damages under several different legal theories. (Doc. 1, Doc. 11).

In its Motion for Summary Judgment, Robinson raises a single issue: whether the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") preempts Mr. Nyswaner's claim that Robinson negligently hired Luga Transportation to provide services.

## DISCUSSION

**I. Analysis**

**1. The Federal Aviation Administration Authorization Act**

In 1994, Congress sought to deregulate certain aspects of the trucking industry, and enacted the Federal Aviation Administration Authorization Act ("FAAAA"). "Concerned that state regulation impeded the free flow of trade, traffic, and transportation of interstate commerce, Congress resolved to displace certain aspects of the State regulatory process. The target at which it aimed was a State's direct substitution of its own governmental commands for competitive market forces in determining the services that motor carriers will provide." *Dan's City Used Cars*, 569 U.S. 251, 263 (2013). The FAAAA's "driving concern was preventing States from replacing market forces with their own, varied commands, like telling carriers they had to provide services not yet offered in the marketplace." *California Trucking Ass'n v. Su*, 903 F.3d 953, 961 (9th Cir. 2018) (internal citation and quotation marks omitted). To create parity between air and motor carriers, Congress enacted a preemption clause that is nearly identical to the Airline Deregulation Act. *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1187 (9th Cir. 1998). "The one difference between the Airline Deregulation Act and

the FAAAA is that the latter contains the additional phrase 'with respect to the transportation of property,' which is absent from the Airline Deregulation Act and which 'massively limits the scope of preemption ordered by the FAAAA.'" *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 644 (9th Cir. 2014) (citing *Dan's City Used Cars*, 569 U.S. at 260).

An "inquiry into the scope of a statute's pre-emptive effect is guided by the rule that the purpose of Congress is the ultimate touchstone in every pre-emption case." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (internal quotation marks omitted). When analyzing Congressional intent, courts must be "mindful of the adage that Congress does not cavalierly preempt state law causes of action." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 471 (9th Cir. 2007). This is particularly true where "Congress neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct." *United Const. Workers v. Laburnum Const. Corp.*, 347 U.S. 656, 663-664 (1954).

In cases of express preemption, courts look to the text of the preemption clause "which necessarily contains the best evidence of Congress' preemptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). The FAAAA provides: "States may not enact or enforce a law . . . or other provision having the force and effect of law . . . related to a price, route, or service of any . . .broker. . . with respect to the transportation of property." 49 U.S.C. § 14501 (c)(2)(A). The phrase "other provision having a force of law" can include traditional common law claims. *See Northwest Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014).

The Ninth Circuit has repeatedly analyzed the scope of the FAAAA's preemption clause, as well as the similar preemption clause of the ADA. *See California Trucking Ass'n*, 903 F.3d at 957 (finding that a California common law standard was not preempted by the FAAAA); *Hickcox-Huffman v. US Airways Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017) (finding that a state breach of contract claim was not preempted by the ADA); *National Federation of the Blind v. United Airlines Inc.*, 813 F.3d 718, (9th Cir. 2016) (holding that

the ADA does not preempt claims under California's antidiscrimination laws); *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 640 (9th Cir. 2014) (holding that the FAAAA did not preempt California's meal and rest break laws because they were not "related to" prices, routes, or services); *Californians for Safe & Competitive Dump Truck Transp.*, 152 F.3d at 1184 (holding that the FAAAA did not preempt the California Prevailing Wage Law); *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998) (holding that the Airline Deregulation Act does not preempt "run-of-the-mill personal injury claims" against airlines).

In interpreting the FAAAA, the Ninth Circuit has explained that "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services." *Dilts*, 769 F.3d at 644. Thus, "even if state laws increase or change a motor carrier's operating costs, broad laws applying to hundreds of different industries with no other forbidden connection with . . . services. . . are not preempted by the FAAAA." *Id.* at 647. And although "general applicability is not dispositive . . . it is a relevant consideration because it will likely influence whether the effect on prices, routes, and services is tenuous or significant." *California Trucking Ass'n*, 903 F.3d at 966.

**2. Nyswaner's negligent hiring claim is not preempted by the FAAAA.**

This issue is controlled by the Ninth Circuit's decisions in *Dilts* and *California Trucking Ass'n*. As the Ninth Circuit explained in *Dilts*, "laws are more likely to be preempted where they operate at the point where carriers provide services to customers at specific prices." *Dilts*, 769 F.3d at 646. Accordingly, preemption under the FAAAA occurs where "a *customer* invokes [state law] to obtain certain *rates* or *services*" outside those provided for in the contract, but not where "the law is a generally applicable background regulation in an area of traditional state power that has no significant impact on a carrier's prices, routes, or services." *California Trucking Ass'n v. Su*, 903 F.3d at 961 (emphasis in original). The point at which Robinson provides services to its customers is where it agrees to arrange the transport goods for other businesses—not when it selects a

carrier to provide that service. And the dispute in this case does not involve a customer seeking better rates or services. Instead, the claim is more analogous to other generally applicable laws that the Ninth Circuit has held are not preempted.

Allowing Nyswaner's negligent hiring claim to proceed would not create a patchwork of state regulations as Robinson alleges. Rather, it would only require that Robinson conform to the general duty of care when it hires trucking companies to deliver goods. *See Factory Mutual Insurance Company v. One Source Logistics*, 2017 WL 2608867 at *7 (C.D. Ca. 2017) (holding that the FAAAA did not preempt negligent hiring claims). This duty of care is generally applicable and applies to many industries that make hiring decisions. In *Charas*, the Ninth Circuit explained that the similarly-phrased ADA "intended to insulate the industry from possible state economic regulation," not to "immunize the [industry] from liability for personal injuries caused by their tortious conduct." 160 F.3d at 1266. The same distinction applies here, where the FAAAA did not likely intend to immunize trucking companies from tortious conduct.

This conclusion is supported by the lack of discussion of state common law claims when Congress enacted the preemption provision of the FAAAA. As the Supreme Court has explained, "[i]t is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984). Here it seems similarly unlikely that Congress meant to exempt transportation brokers from tortious conduct they would otherwise be liable for at common law.

Robinson argues that the Supreme Court's decision in *Rowe* controls the outcome in this case, even when considering the more recent decisions from the Ninth Circuit. (Doc. 42 at 1) (citing *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 367–68 (2008)). But *Rowe* does not control the outcome here for several reasons. *Rowe* did not involve a state common law dispute between two private parties. Nor did Rowe involve a generally applicable state law that applied economy wide. Rather, *Rowe* involved a state regulation that "focuse[d] on trucking and other motor carrier services, which make[] up a

substantial portion of all services." 552 U.S. at 371. The Supreme Court reasoned that the tobacco labeling laws were thus "related to" the "services" of trucking companies and falls squarely within the preemption clause. *Id*. But state negligent hiring claims are not focused on trucking and other motor carrier services. And following *Rowe*, the Ninth Circuit explained that "*Rowe* did not represent a significant shift in FAAAA jurisprudence." *Dilts*, 769 F.3d at 645. Instead, "*Rowe* simply reminds us that, whether the effect is direct or indirect, the state laws whose effect is forbidden under federal law are those with a significant impact on carrier rates, routes, or services." *Id.* (internal citations and quotation marks omitted).

Finally, Robinson repeatedly cites a case from this District, *ASARCO v. England Logistics Inc.*, 71 F.Supp.3d 990, 1006-07 (D. Ariz. 2014), to support its argument that Mr. Nyswaner's negligent hiring claim should be preempted. But *ASARCO* does not discuss the two controlling Ninth Circuit cases on this question—*Dilts* and *California Trucking Ass'n*. And *ASARCO* involved a dispute between two trucking companies over missing cargo—not a claim relating to a third party's personal injury. *Id*. at 993.

Negligent hiring claims are generally applicable state common law causes of action that apply to a wide variety of industries. Unlike the regulation at issue in *Rowe*, common law negligence claims for hiring practices are not targeted or directed at the trucking industry. 552 U.S. at 371. Nor do they operate at the point where Robinson provides services to customers at specific prices, when it agrees to arrange transport for goods with businesses in exchange for a fee. *California Trucking Ass'n*, 903 F.3d at 961. This case does not involve a customer seeking better or different services or rates under state law. *Id.* Because this negligent hiring claim is a "generally applicable" state law that does not "otherwise regulate prices, routes or services," the Court cannot conclude that it would have a "significant impact" on Robinson's services, and so Mr. Nyswaner's claims are not preempted.[1]

---

[1] Because the Court finds that Nyswaner's negligent hiring of Luga Transportation Services is not preempted, it necessarily finds that Mr. Nyswaner's claims of negligent hiring of Mr. Prado are also not preempted.

# CONCLUSION

Because the FAAAA does not preempt Mr. Nyswaner's claim, Robinson's Motion for Summary Judgment is denied.

**IT IS THEREFORE ORDERED** that Robinson's Motion for Summary Judgment (Doc. 35) is **DENIED**.

**IT IS FURTHER ORDERED** that Nyswaner's Motion to Strike (Doc. 59) is **DENIED AS MOOT**.

Dated this 3rd day of January, 2019.

G. Murray Snow
Chief United States District Judge